SOUTER v. LA CROSSE & M. R. CO. See Case No. 6,760.

## Case No. 13,180.

### SOUTER v. LA CROSSE RAILROAD.

[1 Woolw. 80.] [1]

Circuit Court, D. Wisconsin. April, 1865.

PRACTICE IN EQUITY—PERFORMANCE OF DECREE—SURETIES—SUPERSEDEAS—BOND—MORTGAGE—RIGHT OF POSSESSION.

1. The practice in the courts of equity of the United States, does not require that an order be made, limiting the time within which the decree rendered in the cause shall be performed, before a party may be proceeded against, for non-performance of its directions.

2. When litigants in the federal courts are required to give security. their sureties need not be residents of the state in which the suit is pending.

3. Owners of the equity of redemption are entitled to possession until foreclosure.
[Cited in Teal v. Walker, 111 U. S. 251, 4 Sup. Ct. 425.]

4. If the unsuccessful party to a decree does not give a supersedeas bond. he cannot complain if the decree be enforced, notwithstanding any injury to which he may be thereby subjected.

This was a motion to attach the officers of the Milwaukie and St. Paul Railway Company, for disobedience of the order of the court in respect of the delivery of certain property therein mentioned.

MILLER, Circuit Justice. The motion before us is for an attachment for contempt, against the president and directors of the Milwaukie and St. Paul Railway Company, for refusing to deliver the rolling stock mentioned in the order of this court of July 18,

1 [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

1865. To enable us to understand the merits of the motion, it is necessary to recount the proceedings on which that order was founded. At the April term of this court, 1864, the mandate of the supreme court was filed in this case, directing a decree in favor of plaintiffs, for the full amount of their bonds and interest, less whatever sum might be in the hands of the receiver, with provision for one year's time for the defendant to pay the remaining amount. If this sum was not then paid, a sale of the road and its appurtenances was directed. The Minnesota Railroad Company, which owned the equity of redemption, thereupon offered to pay into court the sum due the plaintiffs, on condition that the receiver should be discharged, and the road and all its rolling stock be placed in its possession. A motion to this effect was made, and was resisted by many parties; among others, by the Milwaukie and St. Paul Railway Company, which had the actual possession of the road and rolling stock. The judges of this court being divided in opinion on that motion, it was overruled; and the cause was carried to the supreme court on other matters involved in the final decree. Pending that appeal, the Minnesota Company filed a bill in this court against the St. Paul Company, setting forth its own title to the rolling stock in question, under certain orders and decrees of this court, and the claim of the latter company thereto; and praying that its title might be established, and the possession delivered. There was a demurrer to this bill, and on a hearing, the judges of this court were again divided in opinion, and the bill was dismissed. An appeal was taken from this decree also.

Both these appeals came on to be heard n the supreme court at the same time; r : d that court held. in the latter suit, that the proceedings in chancery, under which the St. Paul Company claimed the rolling stock, conferred no right of possession; and that, upon the allegations of the bill, the Minnesota Company was entitled to the relief prayed. As the case had been decided on demurrer, it was sent back with leave to the St. Paul Company to answer. This they have done, and that case is now at issue. In the other case, the supreme court reversed the order overruling the motion of the Minnesota Company, and sent down its mandate directing that an order be entered, discharging the receiver, and letting the Minnesota Company into possession, if, within a time to be fixed by the court, it should pay all that was due on the mortgage, to foreclose which the suit was brought. On the 18th of July last, the order was made by this court according to the directions of the mandate. On the 1st of January last, the Minnesota Company paid the full amount, interest, and costs that was then due on said mortgage; and demanded of the receiver and of the St. Paul Company, that they should deliver possession of all the property which the order of the court called

for. The receiver delivered the road and all the stock that was in his possession. The St. Paul Company delivered a part of the rolling stock,—all, as they claim, that was necessary to enable the Minnesota Company to work their road profitably,—but refused to fully obey the order of the court by the delivery of all the property. An attachment is now asked in order to the punishment for contempt in this disobedience. A part of this rolling stock had been purchased by the receiver, and was conceded to belong to the Minnesota Company and to the St. Paul Company, in certain proportions which had been fixed by the court. But these proportions had reference to the entire value of such stock, and no partition thereof had been made. The respondents in this motion have delivered very nearly that proportion, in value, to which the Minnesota Company is entitled; and have accepted a proposition made by the receiver, to appoint two competent persons to make a complete division, by whose action they profess a willingness to abide. I do not think any order of this court authorizes the receiver solely to enter upon or to execute any such arrangement; nor do I think the respondents are in contempt in respect of their action here complained of.

As to the remainder of the stock not delivered, they set up several grounds of justification for their refusal. One of these is, that according to the English Chancery practice, another order in addition to the main decree is necessary, fixing a time within which the decree must be performed, before a party can be in contempt for non-performance. However this may be in the English chancery, which is always in session, and can always issue such orders on short notice, I am satisfied that, in our practice, where the courts hold stated terms of short duration, and where the intervening vacations are very long, such a rule is inapplicable. If the English practice were to obtain here, the execution of many orders of the court would be delayed until they became useless, and yet no punishment attach. Besides, in this case, the time became fixed with sufficient definiteness by the payment of the money to the clerk; and the very fact that the respondents partly obeyed the order, shows that they labored under no difficulty because the order, which they here insist upon, was not made. It is said that certain bonds, taken to meet the requirements of the court before the property should be delivered into the custody of the Minnesota Company, were not sufficient. The order of the court provides that these bonds should be approved by the clerk. He has approved them.

It is objected that the sureties live in other states. This objection can have no force in the federal courts. It would be great injustice to require parties, who, in order to litigate in the federal courts, must generally be non-residents, to give resident sureties in large sums. The discretion confided to the clerk, I am satisfied, was well exercised. Moreover, as these bonds are for the protection, not of the St. Paul Company, but of certain creditors of the La Crosse and Milwaukie Company, their sufficiency is of no consequence to these respondents. The respondents, as a further excuse for not delivering all of the property to the Minnesota Company, say, that since the order was made, they have discovered a mortgage of the rolling stock, made long ago to Bronson, Souter, and Knapp, which is a paramount title. This company, however, being owners of the equity of redemption, are entitled to possession until foreclosure, so that the alleged mortgage confers upon the respondents no right of possession, much less does it furnish any justification for disobeying the decrees of this court. Several other technical, and, as I think, frivolous excuses are given why the respondents should not be compelled to perform the decree. These I shall not notice.

There is one reason for their conduct, however, of which I will speak. I apprehend it is the only one on which they have acted. They say that they are the real owners of the property in dispute; that the same is still in litigation, as they are prosecuting appeals from all the judgments deciding against their claims; and that it would be oppressive to take the property from them pending the litigation, especially as it would leave them without stock enough to work their road. I am quite sensible of the force of these positions, and have given them all the consideration which I think they deserve. If I could see that I have any just power to interfere, I might endeavor to mitigate the immediate hardships complained of. It is to be observed, however, that this claim of respondents to the property is the very matter which was passed upon in the decree now to be executed. No supersedeas bond was filed to stay the execution of the decree, until the appeal could be heard in the supreme court. Besides, this very decree was entered in pursuance of the mandate of that court. The only title to the property yet set up, so far as I know, by the respondents, has been declared by the supreme court to be invalid; for, as I have already shown, the mortgage to Bronson, Souter, and Knapp may never ripen into an absolute title in any one; and under it the St. Paul Company have no title whatever. That company is not the mortgagee therein, nor the assignee thereof. This court has decided, at least three times, that the St. Paul Company has no title to the property. The presumption is in favor of the correctness of those decisions. Certainly, in this court, I am bound by them. Now, if they be sound, it follows, that for nearly four years the St. Paul Company has had wrongful possession of this stock. Is it not time it should be given up? Suppose, however, that these decisions are wrong, and

will be finally reversed. Then the property will be restored to the respondents in less than half the time during which, if they are right, it has been wrongfully withheld from the plaintiffs.

Under the decree which is here complained of, the Minnesota Company, on the faith of obtaining possession of this property, paid nearly half a million of dollars. They had demanded this decree as a condition precedent for investing so much money in an already heavily encumbered road. How can this court, with any pretence of justice, now say to them, we will not enforce the decree by which we assured you protection? Every decree of a court which takes property from one man and gives it to another, involves a hardship in the mind of the person dispossessed. In the present case, while that hardship may be a very heavy one, and work a temporary injury not easily repaired, I see no way, consistent with my judicial duty to administer law and justice, to avoid enforcing this decree. Were I to refuse this motion, I do not see how I can ever hereafter attach any person, to compel the performance by him of a decree which he may be reluctant to obey. I do not think the parties have intended any personal disrespect to the court, and would impose no fine or penalty for what is past. I conceive it to be the duty of the court now, however, to compel obedience to its order by this process of attachment, and, if necessary, by imprisonment.

MILLER, District Judge, delivered an opinion, which he did not file, in which, among other things, he said: "I propose that some competent person be appointed to ascertain the quantity of stock necessary fully to operate the road between Milwaukie and Portage, and report thereon; and on such report made, the St. Paul Company shall furnish such additional stock as may be required, and give additional bond in the penal sum of say $200,000, with sureties to be approved by the court, and conditioned for the proper use of the stock in their hands, and to pay for the use of such stock to such corporation as may be entitled thereto, on the decision of the court on the supplemental bill, and such other matters as may be in issue between them. That an attachment be now granted, but not to issue or be served, if these conditions are complied with, within a time to be named."

MILLER, District Judge, refusing to concur in the issuance of an attachment, except upon the terms of the above proposition, the motion was denied.